UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  24-CR-20188-RUIZ(s)(s)

UNITED STATES OF AMERICA

v.

GERARDO FLOREZ BUESAQUILLO,

    **Defendant.**

_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**

The United States, by and through the undersigned Assistant United States Attorney, files this Response to the Defendant's Sentencing Memorandum and Motion for Downward Variance ("Mem.") [DE247]. The government opposes the Defendant's request for a downward variance. The government concurs with the Presentence Investigation Report's ("PSR") calculation of the guidelines as 51 to 63 months' imprisonment and respectfully requests the Court sentence the Defendant at the low end of the guideline range, which is sufficient but not greater than necessary to serve the goals of the 18 U.S.C. § 3553(a) factors.

**OFFENSE CONDUCT**

From at least as early as June 2023 through September 2024, the Defendant joined his co-conspirators in using fictitious businesses to legitimize bulk cash pick-ups of more than $40 million U.S. dollars in narcotics proceeds. PSR ¶¶ 17-23, 46-55. These actions served a larger money laundering organization ("MLO") operating out of Colombia. *Id.* ¶¶ 17-23. Like other individuals recruited by the MLO—including his co-defendants—the Defendant allowed his name and information to be used to create fictitious businesses for which he then opened corresponding business bank accounts. *Id.* ¶¶ 57, 79-82. Co-defendant Carlos Velez, who is awaiting sentencing,

1

created two fake businesses for the Defendant: Florez Comp Parts, Inc. and Flowers AMZ Seller Inc. *Id*. ¶ 79. The Defendant laundered funds only through Florez Comp Parts, Inc. *Id.* The Defendant opened business bank accounts for his fraudulent business at several banks around March 2024. *Id.* ¶ 57. From March 2024 through his initial arrest in September 2024, the Defendant permitted his accounts to be used to deposit narcotics proceeds more than 452 times. *Id.* These criminal proceeds totaled more than $2.13 million and the Defendant received a commission of 0.5 to 1% of the monies deposited into his account as payment. *Id.* ¶¶ 57, 79. To receive his commissions, the Defendant tracked the activity in his accounts. *Id.* This money was transferred out of the Defendant's accounts through 62 separate wire transfers. This means on at least 62 occasions, the Defendant then sent to his co-conspirators the one-time passcode ("OTP") he received from the bank with each transfer request. *Id.*

The Defendant was released on bond following his initial arrest, but the Defendant fled the U.S. soon after. *Id.* ¶ 87. Law enforcement found the Defendant in Panama as he was attempting to enter Colombia. *Id.*  The Defendant is a Colombian citizen. *Id.* at 4.

## ARGUMENT

The Defendant committed a serious crime—corrupting of the U.S. financial system and legitimizing the ill-gotten gains of narcotics traffickers—and then committed *another* crime while on bond by fleeing the U.S. to return home to Colombia. Despite the Defendant's request to be sentenced to 18-24 months' imprisonment, no downward variance is warranted here.

Unlike many of his co-defendants who received downward variances, specific deterrence remains a concern. This Defendant fled the U.S. shortly after being released on bond in the hopes of evading the consequences of his crimes. No downward variance is warranted here.

2

In fashioning a sentence that is sufficient but not greater than necessary, the Court should place particular emphasis on three § 3353(a) factors: the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of these crimes as well as promote respect for the law, and adequate deterrence. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (stressing that the sentencing court "is permitted to attach great weight to one factor over others").

The Defendant's criminal actions—transferring, authorizing, and legitimizing money through fraudulent businesses and bank accounts—fuel all other forms of criminality. The Defendant himself enabled criminals to transfer, access, and legitimize more than $2 million in narcotics proceeds through the U.S. financial system. Without the Defendant's willingness to put his name behind a fraudulent business and corresponding bank accounts as well as to authorize deposits and transfers of funds that he knew he had no legitimate interest in, narcotics traffickers could not access their ill-gotten gains.

The Defendant attempts to liken himself to co-defendant Kimberly Ruiz who was sentenced to 18 months' imprisonment and three years' supervised release. Mem. at 4-5. But the Defendant ignores that he enabled the laundering of more money than she did and, more importantly, that Ruiz never tried to avoid being held accountable for her actions. The Defendant laundered approximately $2.13 million through his fraudulent business bank accounts whereas Ruiz laundered approximately $1.76 million through her fraudulent business bank accounts. Unlike Ruiz who only had one fraudulent business opened under her name, the Defendant had two opened under his name. When it comes to discussing sentencing parity, there is no apt comparison for the Defendant in this matter as no one who has been sentenced similarly evaded authorities like he did. But the Defendant should certainly not receive any less time than his co-defendant Andrew

3

Fermin who was sentenced to 30 months' imprisonment on July 30, 2025. While co-defendant Fermin may have permitted nearly $7 million in narcotics proceeds to be laundered through his accounts, co-defendant Fermin also aided authorities in their search of his own residence for evidence in this investigation, accepted responsibility early on, and lawfully abided by the terms of his pretrial release.

The Defendant repeatedly chose to legitimize dirty money through his actions, to seek recompense for his crimes, and then . The Defendant's crimes, and the additional criminal activity they enabled, are serious. A bottom of the guidelines sentence of 51 months' imprisonment is sufficient but not greater than necessary in light of the nature and circumstances of this serious offense, the need to promote respect for the law, and to deter both the Defendant and others from committing other criminal acts.

## CONCLUSION

For the reasons stated above, the Defendant's conduct warrants a sentence at the low end of the guideline range and nothing less.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:   */s/ Katherine W. Guthrie*
      Katherine W. Guthrie
      Assistant United States Attorney
      Court ID No. A5502786
      99 NE 4th Street
      Miami, Florida 33132-2111
      Phone: (305) 961-9117
      Email: Katherine.guthrie@usdoj.gov

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on July 30, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and it has been served on all counsel of record in the same manner.

                                                  */s/Katherine W. Guthrie*
                                                  Katherine W. Guthrie
                                                  Assistant United States Attorney